IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs October 25, 2005

## DEANGELO DEMOND JOHNSON v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Knox County**
**No. 80587    Richard Baumgartner, Judge**

---

**No. E2005-00707-CCA-R3-PC - Filed December 14, 2005**

---

The petitioner, Deangelo Demond Johnson, pled guilty in the Knox County Criminal Court to possession of more than .5 grams of cocaine with the intent to sell, felony evading arrest, and driving on a suspended license.  He received a total effective sentence of ten years.  Subsequently, the petitioner filed a petition for post-conviction relief, alleging that his counsel was ineffective.  The post-conviction court dismissed the petition, and the petitioner appeals.  Upon our review of the record and the parties' briefs, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which DAVID G. HAYES and JOHN EVERETT WILLIAMS, JJ., joined.

J. Liddell Kirk, Knoxville, Tennessee, for the appellant, Deangelo Demond Johnson.

Paul G. Summers, Attorney General and Reporter; Seth P. Kestner, Assistant Attorney General; Randall E. Nichols, District Attorney General; and Philip H. Morton, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### I.  Factual Background

On September 18, 2003, the petitioner pled guilty to possession of more than .5 grams of cocaine with the intent to sell, a Class B felony; evading arrest, a Class E felony; and driving on a suspended license, a Class C misdemeanor.  At the plea hearing, the State recited the following facts underlying the charges:

> Your Honor, if called to trial in this matter, the State's witnesses and proof would show that on July 25th, 2003, the [petitioner] was observed by officers – or Deputies James Hammond

and Keith Lyons of the Knox County Sheriff's Department involved in what looked like a drug transaction. He was stopped in the middle of the roadway by Johnston Street and Crozer Avenue.

When they activated their emergency equipment, he took off with them pursuing. He fled, sped through residential areas, at one point driving on the wrong side of the road and then sliding off the roadway and bailing out of the car and ran on foot. At one point he was apprehended, and then they went back to the vehicle and in plain view in the vehicle with a clear bag containing approximately nine grams of a white powdery substance – a white hard substance believed to be crack cocaine. That substance was confiscated, and if we had gone to trial, it would have tested positive to be over .5 grams of Schedule II crack cocaine by forensic scientist. A license check was run on the [petitioner's] license, and it was found to be suspended. All these events did occur in Knox County.

Pursuant to the plea agreement, the petitioner received a sentence of eight years for the cocaine conviction, two years for the evading arrest conviction, and six months for the driving on a suspended license conviction. The plea agreement further provided that the six-month sentence was to be served concurrently with the other sentences and the evading arrest sentence was to be served consecutively to the cocaine sentence for a total effective sentence of ten years. The petitioner requested that he be granted probation. Probation was denied, but the petitioner was allowed to serve his sentence in the Community Alternatives to Prison Program (CAPP). One month after he began serving his sentence, the petitioner's alternative sentence was revoked, and he was ordered to serve the remainder of his sentence in confinement.

Subsequently, the petitioner filed a petition for post-conviction relief, alleging that his trial counsel had been ineffective. Specifically, the petitioner complained that counsel had not explained to him the consequences of pleading guilty as opposed to going to trial, counsel failed to explain that his prior juvenile convictions could be used to enhance his sentence, counsel did not discuss the elements of the offenses the State would have to prove at trial, nor did counsel explain the possibility of a suppression motion to keep out the cocaine evidence discovered by police during a search of the petitioner's vehicle.

At the post-conviction hearing, the petitioner testified that he was nineteen years old and had earned his General Equivalency Diploma (GED). He stated that he did not recall meeting with counsel more than once. The petitioner maintained that he and counsel never discussed where the cocaine had been found or how the State would prove that the petitioner possessed the cocaine with the intent to sell. Counsel never told the petitioner the elements of the offenses with which he was charged. The petitioner claimed that counsel did not fully discuss with the petitioner the reason police initially stopped him, and counsel did not explain why police had searched the petitioner's vehicle. Nevertheless, the petitioner stated that he was aware of the evidence the State had against

2

him, and he and counsel had discussed the facts of the case.

The petitioner testified that at the time of the instant offenses, he was on probation for a misdemeanor sentence. Therefore, because of the new offenses, his probation was revoked, and he was required to serve nine months of that sentence in confinement. He stated that he and counsel discussed a potential plea while the case was in sessions court. Counsel told the petitioner that if he accepted the ten-year offer in the instant case, he would not be required to serve the remainder of his misdemeanor sentence in confinement. He would also be allowed to request a probationary sentence on the instant offenses. The petitioner explained that he accepted the plea because it "just sounded good at the time. The first offer, I guess I was just dumb and I ran with it." He claimed that he did not understand that he had an alternative other than pleading guilty.

The petitioner maintained that he did not understand the difference between concurrent and consecutive sentencing. However, he stated that he was aware that he was agreeing to an eight-year sentence for the cocaine conviction and a two-year sentence for the evading arrest conviction, for a total sentence of ten years. The petitioner stated that he did not know what factors the trial court would consider in determining the length of his sentences or the manner of service. The petitioner acknowledged that he had a long juvenile criminal history. He claimed that he did not understand that his juvenile offenses could be used to enhance his sentences.

The petitioner stated that he did not know how much time he was facing if he had taken the case to trial. However, he was aware that he faced charges on the three offenses to which he pled guilty.[1] The petitioner stated that counsel did not explain "all the facts. I mean, like I said, that's how it was explained to me, take these 10 years or serve these nine months on unsupervised probation." The petitioner maintained that if he had known all of the information, he would not have pled guilty and would have gone to trial.

The petitioner's trial counsel testified that he had been licensed to practice law since 1993 and that eighty-five percent of his practice was devoted to criminal defense work. Counsel stated that the petitioner's family contacted him to represent the petitioner because the public defender's office was representing the petitioner's co-defendant. Counsel stated that he had many discussions regarding the case with the assistant district attorney general. He also spoke with the arresting officer concerning the evidence against the petitioner. Counsel opined that the State had a strong case against the petitioner; therefore, much of counsel's effort on the case was spent "trying to minimize the damage to [the petitioner]."

Counsel recalled that the State made two plea offers. The first offer provided that the petitioner would receive an effective six-year sentence to be served as a Range I standard offender, but he would have been required to serve the sentence in confinement. Additionally, the petitioner would have been required to serve nine months in confinement due to his probation violation. The second offer provided for an effective ten-year sentence but allowed the petitioner to seek alternative

---

[1] The record is unclear as to whether the petitioner could have faced additional charges at trial.

3

sentencing. Additionally, the petitioner was not required to serve the remaining nine months of the misdemeanor sentence in confinement. Counsel discussed both plea offers with the petitioner and the petitioner's family. After consulting with his family, the petitioner accepted the second offer.

Counsel recalled that the petitioner's primary concern was that he not serve any time in confinement. Therefore, the second plea offer was more attractive to the petitioner. However, one month into serving his sentence in CAPP, the petitioner violated the terms of his alternative sentence and was ordered to serve the remainder of his sentence in confinement.

Counsel recalled that the petitioner had a good understanding of the law. They discussed the facts of the case, including "the probabilities and possibilities of going to trial." Counsel informed the petitioner that he was facing a sentence of eight to twelve years if he were convicted of the Class B felony offense at trial. Counsel advised the petitioner that he would likely be convicted because he had only his word against that of his co-defendant and the police officer to refute the proof against him. Counsel maintained that he discussed all potential punishments with the petitioner.

Counsel stated that he did not explicitly discuss a suppression hearing with the petitioner. However, they did discuss the fact that police officers knew the petitioner and were aware that the petitioner was driving without a license. Additionally, police had a be on the lookout (BOLO) order for the petitioner. Police stopped the petitioner after witnessing suspicious activity in an area known for its high drug trafficking.

At the conclusion of the hearing, the post-conviction court accredited the testimony of counsel. The court found that the petitioner was aware of his options, and he chose to plead guilty and receive a ten-year sentence. The court noted that the petitioner's main desire had been to remain on the street. The court found that the petitioner received the deal for which he had bargained. On appeal, the petitioner challenges the post-conviction court's dismissal of his petition for post-conviction relief.

## II. Analysis

To be successful in his claim for post-conviction relief, the petitioner must prove all factual allegations contained in his post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f) (2003). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.2 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, we afford the post-conviction court's findings of fact the weight of a jury verdict, with such findings being conclusive on appeal absent a showing that the evidence in the record preponderates against those findings. Id. at 578.

4

A claim of ineffective assistance of counsel is a mixed question of law and fact. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001). However, we will review the post-conviction court's conclusions of law purely de novo. Id.

"To establish ineffective assistance of counsel, the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984)). In evaluating whether the petitioner has met this burden, this court must determine whether counsel's performance was within the range of competence required of attorneys in criminal cases. See Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). Moreover, in the context of a guilty plea, "the petitioner must show 'prejudice' by demonstrating that, but for counsel's errors, he would not have pleaded guilty but would have insisted upon going to trial." Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998); see also Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 370 (1985).

In dismissing the petition for post-conviction relief, the post-conviction court noted that the petitioner had a long history of involvement in the criminal justice system, namely an extensive juvenile history of criminal behavior. The court found that counsel discussed with the petitioner the options available to him. After weighing the options, the petitioner chose to accept the ten-year plea agreement so that he would have the opportunity to avoid confinement. The court stated that the petitioner failed to prove by clear and convincing evidence either that counsel was deficient or that the petitioner was prejudiced by the alleged deficiency. Finally, the court opined that the petitioner received the deal for which he bargained, which deal the petitioner believed, at the time, was in his best interest. The evidence does not preponderate against the findings of the post-conviction court. Therefore, we conclude that the post-conviction court properly dismissed the petition for post-conviction relief.

### III.  Conclusion

Finding no error, we affirm the judgment of the post-conviction court.

---

NORMA McGEE OGLE, JUDGE